```
               IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION


Ronald Martin,                    :

          Plaintiff,              :   Case No. 2:15-cv-2294

     v.                           :   JUDGE GREGORY L. FROST
                                      Magistrate Judge Kemp
Cody Posey, et al.,               :

          Defendants.             :
```

REPORT AND RECOMMENDATION AND ORDER

Plaintiff Ronald Martin, an inmate at the Chillicothe Correctional Institution, filed this action under 42 U.S.C. §1983 alleging violations of his First and Fourteenth Amendment rights as a result of the conduct of defendants Woody Coey, Cody Posey, Brent Cruse, Corby Free, Roger Wilson, and Gary Mohr.  The defendants have filed motions to dismiss and the motions have been fully briefed.  Also before the Court is Mr. Martin's motion for leave to amend the complaint.  For the following reasons, the Court will recommend that the motions to dismiss be granted in part and denied in part.  Further, the Court will recommend that the motion for leave to amend be denied.

I.  Background

Mr. Martin's complaint arises from the same event that forms one of the bases for the complaint filed in Robison v. Coey, Case No. 2:14-cv-944.  As a result, some of the factual allegations detailed in Mr. Martin's complaint relate to circumstances involving Mr. Robison.  The factual allegations of the complaint, relating to Mr. Martin, can be summarized as follows.  Mr. Martin worked in the Ohio Penal Industries paint shop.  Mr. Posey filled in for Mr. Blakeman, Mr. Martin's supervisor during a three-week period in late September to mid-

October, 2014.  At some point during this time, Mr. Posey asked Mr. Martin if he knew how to open the lock on Mr. Blakeman's personal locker.  Mr. Martin did not know of any way short of breaking the lock, so he informed Mr. Posey that he did not.  Eventually, on October 15, 2014, Mr. Martin "began to feel so uncomfortable" with Mr. Posey's request that he told Randy Dunham, a supervisor in the YUSA building.

On October 20, 2014, Mr. Blakeman returned from his vacation, discovered that his lock was missing, and filed an incident report.  The following day, Mr. Blakeman questioned Mr. Martin and other inmate workers about the missing lock to see if they knew anything about it.  Mr. Martin told Mr. Blakeman what Mr. Posey had asked him to do.

Based on information from both Mr. Martin and Mr. Robison, Mr. Blakeman filled out a second incident report on October 23, 2014.  On that same date, Mr. Martin was handcuffed, called to the Captain's office, and placed in isolation for eight days without explanation.  On November 3, 2014, Mr. Martin received a conduct report for lying to staff.  In the report, Mr. Martin was accused of making false statements to corroborate Mr. Robison's story.  This conduct report was false because when Mr. Martin spoke to Mr. Blakeman, he was unaware that Mr. Robison also had spoken with Mr. Blakeman and because Mr. Martin had told the same story days earlier to Mr. Dunham.  The information in the conduct report was designed to "cover up for Defendant Posey's criminal activities."  Later that same day, Mr. Martin was fired from and "re-classed out of" his job at OPI.

The following day, Mr. Martin was called to Sargeant Parnell's Office for disposition of the conduct report.  Sargeant Parnell told Mr. Martin that "'personally I think your (sic) getting screwed, but I have to find you guilty because they want you out of OPI and never allowed through the OPI gate again.'"

-2-

Sargeant Parnell did not turn the conduct report over to the Rules Infraction Board and had formed his opinion that Mr. Martin was getting "'screwed'" based on Mr. Coey's direction regarding what should happen to Mr. Martin.

Mr. Posey worked in concert with the OPI Industry Manager Mr. Coey and the OPI Superintendent Mr. Cruse to retaliate against Mr. Martin by writing a false conduct report. Mr. Coey retaliated against Mr. Martin for telling the truth and giving a statement to Mr. Blakeman. Mr. Coey "covered up" for Mr. Posey's criminal activity by writing the false conduct report against Mr. Martin. Mr. Coey originally had asked Mr. Blakeman to "'make something up'" and write the conduct report because Mr. Coey wanted Mr. Martin to lose his job. Mr. Coey also requested that Mr. Cruse write the false report but had to write it himself when Mr. Cruse declined.

Although Mr. Cruse did not write the false conduct report, he knew that doing so was wrong. In fact, he was willing to write the report until he realized he would have to do so by hand and could not simply submit it anonymously on the computer. Mr. Cruse admittedly knew Mr. Martin was innocent but participated in the cover up to protect Mr. Posey from being held accountable for a criminal offense. Mr. Cruse knew that the investigation undertaken by his office did not conform with the policies of the ODRC and did not alert the CCI administrative offices about the investigation.

Institutional Inspector Corby Free did not respond to Mr. Martin's notification of grievance requesting that he conduct a "proper investigation" of the circumstances surrounding the conduct report. Further, Mr. Free affirmed the conduct report and continued the cover up engaged in by Mr. Posey, Mr. Coey and Mr. Cruse. Mr. Free informed Mr. Martin that the grievance procedure was not a substitute appeal process for hearing officer

decisions but that he could appeal his job reclassification to the Unit Manager Administrator.

Mr. Wilson, Chief Inspector of the ODRC, affirmed the Institutional Inspector's decision and failed to investigate the cover-up brought to his attention by Mr. Martin in his appeal. This violated Mr. Martin's due process rights and allowed the retaliation to continue.  Mr. Mohr, as director of the ODRC, has failed to change Ohio Administrative Rule 5120-9-07 which has had the impact of denying Mr. Martin's right to procedural due process in disciplinary proceedings.

## II.  Legal Standard

A motion to dismiss under Fed. R. Civ. P 12(b)(6) should not be granted if the complaint contains "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  All well-pleaded factual allegations must be taken as true and be construed most favorably toward the non-movant. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009).  Rule 8(a) admonishes the Court to look only for a "short and plain statement of the claim," however, rather than requiring the pleading of specific facts.  Erickson v. Pardus, 551 U.S. 89 (2007).

A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. See Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12 (b)(6) must be read in conjunction with Fed. R. Civ. P. 8(a) which provides that a pleading for

relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  5A Wright & Miller, Federal Practice and Procedure § 1356 (1990).  The moving party is entitled to relief only when the complaint fails to meet this liberal standard.  Id.

On the other hand, more than bare assertions of legal conclusions is required to satisfy the notice pleading standard. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  "In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory."  Id. (emphasis in original, quotes omitted).

> "[w]e are not holding the pleader to an impossibly high
> standard; we recognize the policies behind rule 8 and
> the concept of notice pleading.  A plaintiff will not
> be thrown out of court for failing to plead facts in
> support of every arcane element of his claim.  But when
> a complaint omits facts that, if they existed, would
> clearly dominate the case, it seems fair to assume that
> those facts do not exist."

Id.  It is with these standards in mind that the motions to dismiss will be decided.

### III.  Analysis

#### A.  The Motion to Dismiss

All the defendants have moved to dismiss Mr. Martin's claims against them in their official capacities because, in that capacity, all claims for damages are barred by the Eleventh Amendment.

Turning to the defendants individually, Mr. Coey contends that the claims he violated Mr. Martin's First and Fourteenth Amendment rights by writing a false conduct report in retaliation for Mr. Martin's "telling the truth" to Mr. Blakeman fail for several reasons.  First, he contends that Mr. Martin has no constitutional right to a prison job or to remain free from administrative segregation so no due process claim under §1983

arises from either the termination of his employment or his eight-day stay in segregation.  Further, he argues that the fact that Mr. Martin was found guilty of the allegations of the conduct report negates any retaliation claim.  He also contends that any conspiracy claim should be dismissed because nothing beyond conclusory allegations are pled.  Finally, he asserts that he is entitled to qualified immunity.

The remaining defendants make a similar argument as to the due process claim and also raise the defense of qualified immunity.  Additionally, they argue that the focus of Mr. Martin's complaint is Mr. Coey's alleged actions in writing a false conduct report and they cannot be held liable for his actions.  Because, in their view, Mr. Martin has failed to allege their personal involvement in any unconstitutional behavior, any retaliation claim related to the report cannot succeed against them.  They also assert that any claims relating to their participation in the grievance process do not state a constitutional deprivation and that any conspiracy claim is supported only by conclusory allegations.

Neither of Mr. Martin's responses address the issues raised by defendants relating to his due process claim.  Rather, his response to Mr. Coey's motion to dismiss focuses on the retaliation and conspiracy claims and argues that Mr. Coey is not entitled to qualified immunity.  Further, his response to the remaining defendants' motion to dismiss is limited to addressing the retaliation claim.

### B. <u>Official Capacity Claims</u>

Initially, the defendants all assert that the claims against them in their official capacities must be dismissed.

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." Salehpour v. University of Tennessee, 159 F.3d 199, 206 (6th Cir. 1998) (internal quotations and citations omitted). A plaintiff seeking relief under §1983 may bring a claim against a public official in the official's individual or official capacity. Individual-capacity claims "seek to impose individual liability upon a government officer for actions taken under color of state law." Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). In contrast, an official-capacity claim is "another way of pleading an action against an entity of which an officer is an agent." Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The Eleventh Amendment to the United States Constitution "bars suits brought in federal court against a state and its agencies unless the state has waived its sovereign immunity or consented to be sued in federal court." Grinter, 532 F.3d at 572 (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 66 (1989); additional citations omitted). This immunity extends to claims against individuals sued in their official capacity to the extent that those claims seek monetary damages. Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011), reh'g denied (Sept. 12, 2011); see also McCormick v. Miami Univ., 693 F.3d 654, 662 (6th Cir. 2012). Ohio has not waived its sovereign immunity or consented to being sued in federal court. See Mixon v. State of Ohio, 193 F.3d 389, 397 (6th Cir. 1999); see also Barker, 649 F.3d at 432 ("The burden of establishing Eleventh Amendment immunity lies with the state, and the defense is waived if it is not raised.") (citations omitted). Furthermore, section 1983 has not abrogated that immunity. See Campbell v. Hamilton Cnty., 23 F. App'x 318, 327 (6th Cir. 2001) (quoting Quern v. Jordan, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979)). Accordingly, because the claims at issue here are claims for monetary damages,

claims against defendants in their official capacities are barred by the Eleventh Amendment.

In his complaint, Mr. Martin makes clear that he filed this lawsuit against each defendant in his "personal and official capacity." Consequently, Mr. Martin's claims for monetary relief against defendants in their official capacities must be dismissed under the Eleventh Amendment.

### C. Retaliation Claim

There is no question that retaliation for the exercise of constitutional rights is itself a violation of the Constitution. To state a retaliation claim, a plaintiff must allege three elements: (1) that he or she was engaged in protected conduct; (2) an adverse action was taken against him or her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999). Retaliation claims must include a "chronology of events from which retaliation may plausibly be inferred." Ishaaq v. Compton, 900 F.Supp. 935 (W.D. Tenn. 1995) (quoting Cain v. Lane, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)).

Turning to the first element of protected conduct, certainly Mr. Martin has not asserted a more typical First Amendment retaliation claim. That is, he is not contending that he filed a grievance or lawsuit and was retaliated against as a result. Rather, Mr. Martin's claim, on one hand, is that he gave truthful information to his supervisor, Mr. Blakeman, during Mr. Blakeman's investigation of the locker incident and that he was retaliated against for these statements. In short, Mr. Martin alleges a First Amendment right to respond truthfully to questioning in connection with an investigation undertaken by his supervisor.

The Court of Appeals has acknowledged a prisoner's right to cooperate in an internal prison investigation. See Griffin v. Berghuis, 563 Fed.Appx. 411, 421 (6th Cir. 2014). In Griffin, the Sixth Circuit relied on Cornell v. Woods, 69 F.3d 1383, 1390 (8th Cir. 1995), in reversing a summary judgment finding of qualified immunity in response to a retaliation claim. In Cornell, the Eighth Circuit explained:

> We believe it to be self evident that ordinary citizens enjoy a constitutional privilege to freely participate in government investigations.
>
> The right to respond to a prison investigator's inquiries is not inconsistent with a person's status as a prisoner or with the legitimate penological objectives of the corrections system. To the contrary, we agree with the district court that truthfully answering questions concerning a misconduct investigation against a correctional officer is "undoubtedly quite consistent with legitimate penological objectives." Consequently, we conclude under the facts of this case that Cornell's activity implicated his rights under the First Amendment.
> ...
> It seems elementary to us that a prisoner retains a First Amendment right to respond to questions posed to him by a prison investigator.

Cornell, 69 F.3d at 1388, 1390.

With respect to the second element of a retaliation claim, adverse action, Mr. Martin alleges that Mr. Coey, with the involvement of Mr. Posey and Mr. Cruse, wrote a false conduct report against him and that, as a result, Mr. Martin lost his job. It appears from the complaint that this false conduct report related to his statements regarding Mr. Posey's alleged criminal conduct. The focus of defendants' argument appears to be that because Mr. Martin was found guilty of the alleged misconduct, he has no claim for retaliation and that he has no constitutionally-protected right to a prison job. Defendants'

arguments on this point are not persuasive.

Charging an inmate with a major misconduct violation has been found by the Court of Appeals to be sufficiently adverse conduct to "deter a person of ordinary firmness from the exercise of the right at stake," because conviction of such a violation could result in the prisoner's segregation or loss of good time credits. Carter v. Dolce, 647 F.Supp.2d 826, 834-835 (E.D. Mich. 2009), quoting Thaddeus-X at 396; see also Brown v. Crowley, 312 F.3d 782, 789 (6th Cir. 2002); King v. Zamiara, 150 Fed. Appx. 485, 494 (6th Cir. 2005). More specifically, the filing of false disciplinary reports has been found to be an adverse action. Loyde v. Jenkins, 2015 WL 3645515 (M.D. Tenn. June 10, 2015).

Further, while generally a prisoner has no constitutional right to prison employment or a particular prison job, Jewell v. Leroux, 20 Fed.Appx. 375, 377 (6th Cir. 2001), citing Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989), the Court of Appeals has suggested that, "in the context of a retaliation claim, termination of prison employment may constitute adverse action." Walker v. Brewer, 2014 WL 1117835, *2 (W.D. Mich. March 20, 2014), citing Pasley v. Conerly, 345 Fed.Appx. 981, 985 (6th Cir. 2009); Dobbins v. Craycraft, 423 Fed. Appx. 550, 552 (6th Cir. 2011). Consequently, the Court finds that Mr. Martin has sufficiently pled the second element of a retaliation claim.

The third element of a retaliation claim, that the adverse action was taken because of the protected conduct, is a causation inquiry focusing on the defendants' motive. Thomas v. Eby, 481 F.3d 434, 441 (6th Cir. 2007). Defendants contend that the fact that Mr. Martin was found guilty of the alleged misconduct by a hearing officer bars his retaliation claim. However, here Mr. Martin specifically contends that the hearing officer was acting at Mr. Coey's instruction who, in turn, was acting to protect Mr. Posey. The Court finds that these allegations, at least at the

pleading stage, are sufficient to satisfy Mr. Martin's burden as to the third element of his retaliation claim.

To summarize, Mr. Martin has stated a claim for retaliation based on the following allegations. He provided statements to his supervisor Mr. Blakeman regarding Mr. Posey's alleged criminal activity in connection with Mr. Blakeman's investigation regarding the break-in to his locker. As a result, Mr. Coey prepared a false conduct report against Mr. Martin in conspiracy with Mr. Posey and Mr. Cruse which then caused Mr. Martin to lose his job. Mr. Coey and Mr. Posey conspired to have Mr. Coey write the false conduct report because Mr. Martin had implicated Mr. Posey in Mr. Blakeman's investigation. Further, Mr. Cruse had full knowledge of the false conduct report, was willing to write it himself until he realized he could not do so anonymously, and admittedly worked to cover up Mr. Posey's guilt. Beyond these specific allegations and these specific defendants, Mr. Martin has not stated a retaliation claim.

That is, Mr. Martin has not alleged the involvement of Mr. Free, Mr. Wilson, or Mr. Mohr in the act of retaliation at issue. At most, Mr. Martin has alleged in a broad and conclusory manner that these defendants perpetuated the retaliation because they refused to provide the relief Mr. Martin sought through the grievance process. Given that Mr. Martin has not alleged the personal involvement of these defendants in the alleged retaliation, and the most he has alleged is their failure to act, they cannot be liable under §1983. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264 (2000). Consequently, the Court will recommend that the motion to dismiss be granted as to Mr. Martin's retaliation claim against Mr. Free, Mr. Wilson, and Mr. Mohr.

D. Conspiracy Claim

In his complaint, Mr. Martin repeatedly explains the actions

of Mr. Coey, Mr. Posey, and Mr. Cruse with respect to the allegedly false conduct report in terms of a conspiracy. The defendants recognize Mr. Martin's attempt to set forth a conspiracy claim, but contend that Mr. Martin's allegations are too conclusory to state such a claim under §1983. However, to assert such a claim under §1983, a plaintiff must show: (1) a single plan, (2) that the alleged co-conspirators shared in the general objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived plaintiff of his civil rights. Hooks v. Hooks, 771 F.2d 935, 943-44 (6th Cir. 1985). Here, Mr. Martin has alleged that a single plan existed - a plan to protect Mr. Posey by implicating Mr. Martin as a liar; that Mr. Posey, Mr. Coey, and Mr. Cruse shared in this general objective of protecting Mr. Posey at Mr. Martin's expense; that a false conduct report was written in retaliation for Mr. Martin's exposing Mr. Posey's illegal conduct; and that this retaliation violated Mr. Martin's First Amendment rights. While certainly, Mr. Martin will be required to come forward with specific factual support in order to sustain his conspiracy claim, the Court finds that these allegations, at least at the pleading stage, are sufficient to satisfy Mr. Martin's burden. Consequently, the Court will recommend that the motions to dismiss be denied as to Mr. Martin's conspiracy claim against Mr. Coey, Mr. Posey, and Mr. Cruse.

### E. Procedural Due Process Claim

With respect to his due process claim against various named defendants, Mr. Martin frames that claim as follows. According to the complaint, various defendants perpetuated the violation of his due process rights by failing properly to address the issue of the hearing, as well as his claims of retaliation, when he undertook to pursue his claims through the prison grievance system. Mr. Martin claims that he was unable to appeal or grieve

the hearing officer's decision and that many of the defendants failed to follow ODRC rules and policy in connection with the grievance process. He also contends, most specifically with respect to his claim against Mr. Mohr, that the Ohio Administrative Code regulations relating to the authority of hearing officers violate his due process rights.

Defendants are correct that, to the extent Mr. Martin may be asserting a due process claim because of an alleged liberty interest in his prison job, he cannot succeed. Prisoners do not have a constitutionally protected liberty interest in prison vocational, and educational programs based on the Fourteenth Amendment. Newsom v. Norris, 888 F.2d 371, 374 (6th Cir. 1989). Consequently, the loss of a prison job does not trigger due process protections and the Court will not consider Mr. Martin's due process claim as it relates to his loss of his prison job.

Given the way in which Mr. Martin has pled his due process claim as it relates to most of the named defendants, however, his focus appears to be on the way various defendants handled his informal complaints and grievances. For example, Mr. Martin states that Mr. Free did not call any witnesses or conduct any investigation in response to the notification of grievance but simply affirmed the Conduct Report. Additionally, Mr. Martin contends that Mr. Wilson did not conduct any investigation but simply affirmed Mr. Free's decision. With respect to Mr. Mohr, Mr. Martin appears to be alleging that Mr. Mohr has failed to change the administrative regulations which resulted in the deprivation of his due process rights. These allegations do not state a due process claim against the defendants.

To the extent that Mr. Martin contends that these defendants mishandled his informal complaints and grievances, he has failed to state a claim because he has no constitutional right to an effective prison grievance procedure. Young v. Gundy, 30

Fed.Appx. 568, 569-70 (6th Cir. 2002); LaFlame v. Montgomery County Sheriff's Department, 3 Fed.Appx. 346, 348 (6th Cir. 2001). Additionally, responding to a grievance or participating in the grievance procedure is insufficient to trigger a prison official's liability, even when grievances alert them to unconstitutional actions. See Shehee v. Luttrell, 199 F.3d at 300.

More specifically with respect to Mr. Mohr, Mr. Martin's framing of his claims indicates an intention to state a claim against Mr. Mohr solely on the basis of his role as the Director of the ODRC. As explained above, Mr. Martin's claims for damages against Mr. Mohr in his official capacity clearly are barred by the Eleventh Amendment. Further, to the extent that Mr. Martin may be attempting to state a claim for damages against Mr. Mohr in his personal capacity, Mr. Martin cannot succeed. Allegations of direct involvement in constitutional deprivations, rather than attempts to impose liability by virtue of the doctrine of respondeat superior, are necessary in order to hold an individual defendant liable under §1983. Monell v. Department of Social Services, 436 U.S. 658 (1978).

Finally, to the extent that Mr. Martin is attempting to state a claim under §1983 by alleging that defendants' actions with respect to the grievance process violated ODRC policies, such a claim must also fail. An alleged failure to comply with an administrative rule or policy does not rise to the level of a constitutional violation. Laney v. Farley, 501 F.3d 577, 581 n. 2 (6th Cir. 2007). Consequently, the Court will recommend that Mr. Martin's due process claim be dismissed as to all defendants.

### F. Qualified Immunity Defense

The defendants' qualified immunity defense, as presented, is limited to Mr. Martin's due process claim. In Mr. Coey's motion to dismiss, he claims he is entitled to qualified immunity

because "... there is no clearly established constitutional right to a prison job, to avoiding a short transfer to segregation, or to averting a conduct report that is found to be meritorious.  As such Defendant is entitled to qualified immunity and the claims against him should be dismissed."  The remaining defendants, in their motion to dismiss, contend that "... there is no clearly established constitutional right to an effective grievance procedure, to a prison job, or to control or supervision of a defendant's employees.  As such, Defendants are entitled to qualified immunity and the claims against them should be dismissed."  Because the defendants do not address their qualified immunity argument to Mr. Martin's retaliation claim, the Court will not consider it.

### IV.   The Motion for Leave to Amend

Following the filing of the motions to dismiss and the issuance of the Court's order of October 21, 2015 adopting the Report and Recommendation in Robison v. Coey, Case No. 2:15-cv-944, Mr. Martin moved for leave to amend his complaint.  Although the motion is unopposed, for the following reasons, the Court will recommend that it be denied.

First, Mr. Martin has not provided a copy of a proposed amended complaint for the Court's consideration.  According to his brief motion, however, he seeks to:

    1.   Add the Hearing Officer, Rick Parnell as a Defendant.
    2.   Add the Ohio Department of Rehabilitation and Correction as a Defendant.
    3.   Add Injunctive Relief to the Plaintiffs Claim for Relief.

On one hand, his failure to provide a copy of a proposed amended complaint or to provide more detailed proposed amendments could be considered grounds to deny his motion.

On the other hand, viewing his limited proposed amendments

in the context of his original complaint, the Court concludes that such amendments would be futile in light of the recommendation set forth above.

To the extent that Mr. Martin seeks to add the hearing officer, Mr. Parnell, as a defendant, the allegations of the complaint addressing Mr. Parnell's alleged conduct relate only to Mr. Martin's due process claim. That is, the complaint's allegations suggest that Mr. Parnell found Mr. Martin guilty on the conduct report solely due to Mr. Coey's desire to have Mr. Martin fired and that Mr. Parnell himself independently believed that Mr. Martin was getting '"screwed.'"

Similarly, Mr. Martin's request for injunctive relief, again looking at the allegations of the complaint, relates only to his due process claim. That is, Mr. Martin believes a change to Ohio Administrative Rule 5120-9-07 is necessary because it grants too much power to a hearing officer and acts to deprive inmates of their due process rights. He directs this claim to Gary Mohr in his role as ODRC Director. However, because the Court has recommended that the due process claim be dismissed, these proposed amendments would not survive a motion to dismiss.

Further, the ODRC would be entitled to Eleventh Amendment immunity as to any claim for monetary damages arising from the alleged retaliation. For these reasons, the Court will recommend that the motion for leave to amend be denied.

## V. Remaining Motions

Mr. Martin has requested the appointment of counsel. Since this action has not yet progressed to the point that the Court is able to evaluate the merits of plaintiff's claim, the motion for appointment of counsel will be denied. See Mars v. Hanberry, 752 F.2d 254 (6th Cir. l985).

Finally, Mr. Martin's motion to moot the motion to dismiss filed by the defendants other than Mr. Coey will be denied.

-16-

VI. Recommendation

For the reasons stated above, the Court recommends that the motions to dismiss (Doc. 10 and 15) be granted in part and denied in part.  It is recommended that the motions to dismiss be denied as to Plaintiff's retaliation and conspiracy claims against defendants Coey, Posey, and Cruse in their individual capacities.  It is recommended that the motions to dismiss be granted as to all other claims and defendants.  Further, it is recommended that the motion for leave to amend the complaint (Doc. 17) be denied.

Further, the motion to moot the motion to dismiss (Doc. 16) and the motion for appointment of counsel (Doc. 19) are denied.

PROCEDURE ON OBJECTIONS TO THE REPORT AND RECOMMENDATION

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

MOTION FOR RECONSIDERATION OF THE ORDER

Any party may, within fourteen days after this Order is filed, file and serve on the opposing party a motion for reconsideration by a District Judge. 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01, pt. IV(C)(3)(a). The motion must specifically designate the order or part in question and the basis for any objection. Responses to objections are due fourteen days after objections are filed and replies by the objecting party are due seven days thereafter. The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge. S.D. Ohio L.R. 72.3.

/s/ Terence P. Kemp
United States Magistrate Judge