IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ronald Martin,                          :

                    Plaintiff,          :   Case No. 2:15-cv-2294

     v.                                 :   JUDGE GEORGE C. SMITH
                                            Magistrate Judge Kemp
Cody Posey, et al.,                     :

                    Defendants.         :


                            ORDER

     This prisoner civil rights case is before the Court on a
variety of pending motions.  These motions include numerous
motions filed by plaintiff Ronald Martin, namely:  two identical
motions for leave to file additional admissions (Docs. 42 and
44); a motion for leave to file additional interrogatories (Doc.
43); four motions to compel (Docs. 45, 46, 47, and 51); a motion
for alternate service (Doc. 49); a motion for extension of time
to complete discovery (Doc. 50); a motion to appoint counsel
(Doc. 54); a motion to have defendant Cody Posey undergo a
computerized voice stress analyzer (Doc. 57); a motion for a
temporary stay (Doc. 63); a motion to file a sur-reply (Doc. 70);
and a motion for emergency relief (Doc. 71).  Defendants Cody
Posey, Woody Coey, and Brent Cruse have also filed a motion to
depose Mr. Martin (Doc. 53); a motion for leave to file a sur-
reply (Doc. 59); and a motion for an extension of time to
complete discovery (Doc. 61).  The Court resolves all of these
motions as follows.

                    I.  Background

     Mr. Martin, an inmate at the Chillicothe Correctional
Institution filed this 42 U.S.C. §1983 action alleging violations
of his First and Fourteenth Amendment rights as a result of

defendants' conduct.  Mr. Martin's complaint arises from the same
event that forms one of the bases for the complaint filed in
<u>Robison v. Coey</u>, Case No. 2:14-cv-944.  As a result, some of the
factual allegations detailed in Mr. Martin's complaint relate to
circumstances involving Mr. Robison.  The factual allegations of
the complaint, relating to Mr. Martin and the current defendants,
can be summarized as follows.

Mr. Martin worked in the Ohio Penal Industries paint shop.
Mr. Posey filled in for Mr. Blakeman, Mr. Martin's supervisor
during a three-week period in late September to mid-October,
2014.  At some point during this time, Mr. Posey asked Mr. Martin
if he knew how to open the lock on Mr. Blakeman's personal
locker.  Mr. Martin did not know of any way short of breaking the
lock, so he informed Mr. Posey that he did not.  Eventually, on
October 15, 2014, Mr. Martin "began to feel so uncomfortable"
with Mr. Posey's request that he told Randy Dunham, a supervisor
in the YUSA building.

On October 20, 2014, Mr. Blakeman returned from his
vacation, discovered that his lock was missing, and filed an
incident report.  The following day, Mr. Blakeman questioned Mr.
Martin and other inmate workers about the missing lock to see if
they knew anything about it.  Mr. Martin told Mr. Blakeman what
Mr. Posey had asked him to do.

Based on information from both Mr. Martin and Mr. Robison,
Mr. Blakeman filled out a second incident report on October 23,
2014.  On that same date, Mr. Martin was handcuffed, called to
the Captain's office, and placed in isolation for eight days
without explanation.  On November 3, 2014, Mr. Martin received a
conduct report for lying to staff.  In the report, Mr. Martin was
accused of making false statements to corroborate Mr. Robison's
story.  This conduct report was false because when Mr. Martin
spoke to Mr. Blakeman, he was unaware that Mr. Robison also had

spoken with Mr. Blakeman and because Mr. Martin had told the same story days earlier to Mr. Dunham.  The information in the conduct report was, according to Mr. Martin, designed to "cover up for Defendant Posey's criminal activities."  Later that same day, Mr. Martin was fired from and "re-classed out of" his job at OPI.

The following day, Mr. Martin was called to Sergeant Parnell's Office for disposition of the conduct report.  Sergeant Parnell told Mr. Martin that "'personally I think your (sic) getting screwed, but I have to find you guilty because they want you out of OPI and never allowed through the OPI gate again.'"  Sergeant Parnell did not turn the conduct report over to the Rules Infraction Board and had formed his opinion that Mr. Martin was getting "'screwed'" based on Mr. Coey's direction regarding what should happen to Mr. Martin.

Mr. Martin also claims that Mr. Posey worked in concert with the OPI Industry Manager Mr. Coey and the OPI Superintendent Mr. Cruse to retaliate against Mr. Martin by writing a false conduct report.  Mr. Coey retaliated against Mr. Martin for telling the truth and giving a statement to Mr. Blakeman.  Mr. Coey "covered up" for Mr. Posey's criminal activity by writing the false conduct report against Mr. Martin.  Mr. Coey originally had asked Mr. Blakeman to "'make something up'" and write the conduct report because Mr. Coey wanted Mr. Martin to lose his job.  Mr. Coey also requested that Mr. Cruse write the false report but had to write it himself when Mr. Cruse declined.

Although Mr. Cruse did not write the false conduct report, he knew that doing so was wrong.  In fact, he was willing to write the report until he realized he would have to do so by hand and could not simply submit it anonymously on the computer.  Mr. Cruse allegedly knew Mr. Martin was innocent but participated in the cover up to protect Mr. Posey from being held accountable for a criminal offense.  Mr. Cruse knew that the investigation

-3-

undertaken by his office did not conform with the policies of the
ODRC and did not alert the CCI administrative offices about the
investigation.

II.  Mr. Martin's Discovery-Related Motions

A.  Legal Standard

The general principles involving the proper scope of
discovery are well known.  The Federal Rules of Civil
Procedure authorize extremely broad discovery.  United States v.
Leggett & Platt, Inc., 542 F.2d 655, 657 (6th Cir. 1976), cert.
denied 430 U.S. 945 (1977); see also Lewis v. ACB Business
Servs., Inc., 135 F.3d 389, 402 (6th Cir. 1998)("The scope of
discovery under the Federal Rules of Civil Procedure is
traditionally quite broad").  Therefore, Fed.R.Civ.P. 26 is to be
construed liberally in favor of allowing discovery.  Dunn v.
Midwestern Indemnity, 88 F.R.D. 191, 195 (S.D. Ohio 1980).
However, recent amendments to Fed. R. Civ. P. 26(b)(1) highlight
certain proportionality factors which the parties are to consider
in making discovery requests, responses, or raising objections.
See Advisory Committee Notes to December 1, 2015 amendments
("[t]his change reinforces the Rule 26(g) obligation of the
parties").  Thus, under current Fed.R.Civ.P. 26(b)(1), the
parties may obtain discovery regarding any non-privileged matter
which is relevant to any claim or defense and proportional to the
needs of the case.

The proportionality analysis requires consideration of a
number of factors, including the importance of the issues at
stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources,
and the importance of the discovery in resolving the issues.
Consideration must also be given to whether the burden or expense
of the proposed discovery outweighs its likely benefit.  Fed. R.
Civ. P. 26(b)(1)'s inclusion of the proportionality factors

enforces the collective obligation to consider proportionality in discovery disputes; it does not, however, permit a party to refuse discovery simply by making a boilerplate objection that the information requested is not proportional.  See Advisory Committee Notes to December 1, 2015 amendments.  Further, the party seeking discovery does not bear the burden of addressing all of the proportionality factors.  Id.

Also, despite other changes to Rule 26, it is still the case that information need not be admissible in evidence in order to be discoverable.  Fed. R. Civ. P. 26(b)(1); see also Mellon v. Cooper-Jarrett, Inc., 424 F.2d 499, 500-501 (6th Cir. 1970) (noting that "[t]he scope of examination permitted under Rule 26(b) is broader than that permitted at trial").

The Court has the duty to deny discovery directed to matters not legitimately within the scope of Rule 26, and to use its broad discretionary power to protect a party from harassment or oppression which may result even from a facially appropriate discovery request.  See Herbert v. Lando, 441 U.S. 153 (1979); see also Lavado v. Keohane, 992 F.2d 601 (6th Cir. 1993)("[I]t is well established that the scope of discovery is within the sound discretion of the trial court")(quoting Chrysler Corp. v. Fedders Corp., 643 F.2d 1229, 1240 (6th Cir.), cert. denied 454 U.S. 893 (1981)).  Further, the Court has discretion to limit or even preclude discovery which meets the general standard of relevance found in Rule 26(b)(1) if the discovery is unreasonably cumulative or duplicative, can be obtained from some other source which is more convenient, less burdensome, or less expensive, or if the party seeking the information has had ample opportunity to obtain it in the action.  See Fed. R. Civ. P. 26(b)(2).  It is with these general principles in mind that the present discovery motion will be resolved.

B.  The Motions for Leave to "File" Additional Discovery Requests

-5-

<u>(Docs. 42, 43, and 44)</u>

As noted above, Mr. Martin has filed two identical motions seeking leave to serve an additional forty requests for admission on each defendant.  The gist of these motions is that Mr. Martin has attempted to obtain the consent of defense counsel to serve these additional requests but the consent was denied.  Mr. Martin notes that these additional requests are necessary because many of the defendants' previous answers "have been in direct conflict with each other."  Mr. Martin has not attached copies of the proposed additional requests.  For similar reasons, through his other motion for leave, Mr. Martin seeks to serve an additional 25 interrogatories on each defendant.  He also has not submitted copies of the proposed interrogatories for the Court's review.

In response, defendants filed an "omnibus" response to Mr. Martin's several pending discovery motions.  As it relates to these particular motions, defendants contend that Mr. Martin has not properly conferred with them and that he has failed to set forth good cause.  Defendants also note that, with respect to his request for leave to serve additional requests for admission, the Court has previously denied a similar motion filed by Mr. Martin. They also point out that Mr. Martin does not provide any examples of alleged "conflicting statements."  In reply, Mr. Martin contends that he is not required to demonstrate good cause for either of his requests.

Initially, with respect to the motions relating to requests for admissions, defendants are correct in pointing out that the Court previously denied a similar motion.  <u>See</u> Order (Doc. 35). In denying the earlier motion, the Court stated, in part:

> Requests for Admission are governed by
> Fed.R.Civ.P. 36.  This rule provides in part that, "[a]
> party may srve on any other party a written request to
> admit ... the truth of any matters within the scope of
> Rule 26(b)(1) relating to: (A) facts, the application
> of law to fact, or opinions about either [.]"

Fed.R.Civ.P. 36(a)(1). <u>Piskura v. Taser Int'l</u>, 2011 WL 6130814, *1, report and recommendation adopted, 2011 WL 6122756 (S.D. Ohio Dec. 8, 2011). The purpose of this rule is to narrow the issue of proof in trial litigation and reduce the time and costs of courtroom litigation. <u>Id</u>. It is not a traditional discovery mechanism.

Fed.R.Civ.P. 26(b)(2)(A) provides that, "by order of local rule, the court may [] limit the number of requests under Rule 36. Local Civil Rule 36.1 states, "[u]nless there has been agreement of the responding party or leave of Court has first been obtained, no party shall serve more than forty requests for admission (including subparts) upon another party."

"'Good cause' means 'reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief.'" <u>Brown v. Morrow</u>, 2011 WL 2471554, *2 (M.D. Tenn. June 21, 2011), quoting <u>Williams v. Bagley</u>, 380 F.3d 932, 974 (6th Cir. 2004). In a similar context, the court in <u>Shaw Grp., Inc. v. Zurich Am. Ins. Co.</u>, 2014 WL 1816494, *8 (M.D. La. May 7, 2014), found that, "[f]requently, the issue becomes whether the requesting party has adequately shown that the benefits of additional interrogatories outweigh the burden to the opposing party." To show good cause for expanding the limits on discovery requests, the Court looks to whether the benefits of the expansion outweighs the burden of the extra discovery.

While pro se pleadings are construed more liberally, "the fact that Plaintiff proceeds pro se does not entitle him to ignore the procedural rules for conducting discovery." <u>Thatcher v. Warden, Lebanon Corr. Inst.</u>, 2012 WL 5496503, *3 (S.D. Ohio Nov.13, 2012). Therefore, absent and agreement with the Defendants, Mr. Martin must demonstrate good cause for the Court to grant this request.

Here, Mr. Martin has already served forty requests for admission. He has neither provided a copy of the additional requests he wishes to serve for the Court's review nor otherwise demonstrated how these additional requests are pertinent to his claim. ... The Court understands that prisoners who represent themselves and have very limited resources to conduct discovery may,

at times, require more written discovery requests -
both interrogatories and other types of written
requests - than other litigants. Requests for
admission, while they can assist a party in conducting
discovery, are typically not as efficient a means for
doing so as are interrogatories and document requests.
Here, Mr. Martin has not shown why he needs more
requests for admission or how any additional requests
will help him obtain the information he needs to
prosecute his claims.

This remains the situation. To the extent that Mr. Martin
suggests that he needs to serve such additional requests because
of the defendants' inconsistent answers, as explained below,
serving additional requests for admission will not solve this
problem. This same reasoning applies to Mr. Martin's motion for
leave to serve additional interrogatories. Consequently, all of
these motions will be denied.

     C. <u>Motions to Compel (Docs. 45, 46, 47, and 51)</u>

Mr. Martin also has filed four motions to compel. Two of
these motions relate to requests for production of documents
directed to Mr. Posey (Docs. 45 and 51). The other two motions
relate to the second set of interrogatories directed to Mr. Posey
(Doc. 46) and to Mr. Coey and Mr. Cruse (Doc. 47). Defendants
responded to these four motions as part of their omnibus
response. Briefly, defendants contend that all four of Mr.
Martin's motions to compel should be denied because: (1) he has
not certified the extrajudicial efforts undertaken to resolve any
discovery disputes; and (2) the motions have been rendered moot
because they have responded.

In reply, Mr. Martin devotes a fair amount of discussion to
the issues of his extrajudicial efforts and certification.
Although he concedes that he inadvertently failed to attach a
certification to his motions, the Court is satisfied from both
Mr. Martin's initial filings and the discussion in his reply that

he has undertaken extrajudicial efforts to resolve his discovery
disputes. Consequently, the Court will not deny the motions to
compel on this ground.

Mr. Martin's reply also clarifies the discovery requests at
issue. The requests still at issue appear to relate only to two
of the motions to compel (Docs. 46 and 47) and include:
Interrogatory Nos. 4 and 5 directed to Mr. Coey (Doc. 47);
Interrogatory Nos. 6 and 11 directed to Mr. Cruse (Doc. 47);
Interrogatory Nos. 3, 4, 7, 9 and 12 directed to Mr. Posey (Doc.
46).

With respect to Mr. Martin's motions to compel relating to
requests for production of documents (Docs. 45 and 51) the status
of these motions appears to be as follows. In the first motion,
Doc. 45, Mr. Martin stated that "[a]s of the filing of the
present motion counsel has failed to produce the requested
documents." In his reply, Mr. Martin states that, "although the
defendant's have responded, the motion to compel is still
appropriate given that the defendant's failed to produce many of
plaintiff's request." Mr. Martin, however, does not explain
which specific requests encompassed by his first motion to compel
still remain at issue.

With respect to his second motion to compel relating to the
second request for production of documents, (Doc. 51), this
motion involves Mr. Martin's request for copies of his
"medical/mental health records." Although, as the parties'
filings indicate, defendants originally objected to the request
on grounds of relevance, defense counsel subsequently arranged
for Mr. Martin to review these records, select the records he
wanted to have copied, and have the copies sent to defense
counsel. The gist of Mr. Martin's supplemental filing is that,
although he did review his records and have copies sent to
defense counsel, defense counsel has yet to provide him with the

copies.

In light of all of the above, the Court will deny as moot the first motion to compel relating to the requests for production of documents (Doc.45).  With respect to the second motion to compel relating to a request for production of documents (Doc. 51) the Court will grant defendants' motion to file a sur-reply (Doc. 59) for the limited purpose of addressing this motion.  Consequently, the Court will limit the focus of this order to only the motions to compel relating to interrogatories directed to the defendants (Docs. 46 and 47).

The Court has reviewed Mr. Martin's recitations in his reply of the interrogatories and responses still at issue in his motions to compel.  In doing so, the Court notes that Mr. Martin has not attached copies of all of the interrogatories and responses addressed in his motions.  In his reply, he attached copies only of the following, evidencing the interrogatory and the particular defendant's responses provided over objection:

<u>Interrogatories Directed to Mr. Coey</u>
<u>(Motion to Compel Doc. 47)</u>:

**Interrogatory No. 4**: In the conduct report written against the plaintiff you stated "each inmate did not give a specific time or date but stated a week time frame instead."  Question: Identify the 'week time frame you are referring to.

**Response**:  I do not recall.

**Interrogatory No. 5**: In the conduct report that you wrote against plaintiff you stated 'through interviews it was discovered that the lock in question was noticed by staff to be missing from the locker Monday morning of the week that inmate Martin was stating that the incident took place.'  Question: Identify what evidence you relied upon to determine that the plaintiff fabricated a story about a missing lock when in fact you stated in the conduct report that the lock was in fact missing.

**Response**:  In that report I did not indicate that a

-10-

lock was missing, the report indicated that Plaintiff fabricated a story about how the lock went missing.

Interrogatories Directed to Mr. Cruse
(Motion to Compel Doc. 47):

**Interrogatory No. 6**: In Interrogatory #11 to Defendant Posey's First set of Interrogatories Defendant Posey stated 'I do not know how the lock went missing. I do not who broke the lock. I do not know when the lock went missing.' Question: Do you have any knowledge of who broke the lock, how the lock went missing, and when th lock went missing.

**Response**: I do not have an answer to any of those three questions.

Interrogatories Directed to Mr. Posey
(Motion to Compel Doc. 46):

**Interrogatory No. 9**: Did you at any time ever discuss the broken lock with defendant Cruse?

**Response**: I do not recall.

**Interrogatory No. 12**: Other than defendant Coey, who has spoken directly with you (per investigation or otherwise) regarding the broken lock?

**Response**: Assistant Attorney General Mindy Worly, Defendant Coey, and my attorney Assistant Attorney General Alexander Kennedy in the context of these questions. I do not recall specifically speaking with any other individual.

Because Mr. Martin has not submitted copies of the remaining discovery responses that he has identified as at issue, the Court will consider only the above responses in ruling on Mr. Martin's motions. In doing so, the Court will deny the motions to compel without prejudice as they relate to these other responses. See Peterson v. Kramer, 2015 WL 1954615, *3 (S.D. Ohio Apr. 29, 2015) (denying defendants' motion to compel without prejudice because it did not include copies of plaintiffs' discovery responses).

With respect to Mr. Coey's responses, Mr. Martin contends

-11-

that these interrogatory responses conflict with certain responses Mr. Coey has provided to other discovery requests. With respect to Mr. Cruse's response, Mr. Martin contends that it is both evasive and perhaps inconsistent with other responses he provided to other discovery requests.  As a result, Mr. Martin asserts that this response is further evidence of Mr. Cruse's conspiracy to shield Mr. Posey from liability.  With respect to Mr. Posey's responses, Mr. Martin argues that Mr. Posey also is being evasive and that his second answer is inconsistent with Mr. Cruse's discovery responses.

Initially, the Court does not view any of the defendants' responses as evasive, including responses indicating a lack of recollection.  Further, Mr. Martin appears to be challenging, in some detail, the truthfulness of all of these interrogatory responses.  "'The purpose of a motion to compel discovery is not to challenge the truthfulness of the response but rather to compel a party to answer the interrogatory.'"  Annabel v. Heyns, 2014 WL 1207802, *1 (E.D. Mich. March 24, 2014), quoting Stewart v. Capital Newspapers, Inc. 2010 WL 1508289 (W.D. Wis. Apr. 14, 2010).  That is, a motion to compel is not the correct way for Mr. Martin to argue about the factual accuracy of the defendants' responses.  See Grant v. Target Corp., 2013 WL 571845 (S.D. Ohio Feb. 13, 2013).  Because that appears to be the sole purpose of Mr. Martin's  motions to compel, they will be denied.  Further, the Court notes that, if the remaining responses Mr. Martin has identified as at issue are as represented by Mr. Martin (Interrogatory No. 11 directed to Mr. Cruse and Interrogatory Nos. 3, 4, and 7 directed to Mr. Posey), the Court would reach a similar conclusion with respect to them.

### III.  Mr. Martin's Remaining Motions

#### A.  Motion for Alternate Service (Doc. 49)

Through this motion, Mr. Martin requests the Court to direct

-12-

the United States Marshal Service to serve three subpoenas on non-party witnesses.  The subpoenas, directed to Tim Blakeman, Randy Dunham, and Mac Wolfenberger, request that these individuals provide "affidavit testimony," directed to specific issues, at a date and time of their choosing and before any person authorized to administer oaths.  Mr. Martin asserts that, because he was granted leave to proceed in forma pauperis, his request is proper under 28 U.S.C. §1915(d).

In their response, defendants assert that Mr. Martin's subpoenas are defective in that they request affidavit testimony and that such a request is outside the scope of Fed.R.Civ.P. 45. Rather, defendants explain, Mr. Martin's option for obtaining testimony from these individuals is to seek to depose them by written questions pursuant to Fed.R.Civ.P. 31.  Additionally, they note that Mr. Martin has not tendered any witness fees, court reporter fees, or fees for the issuance of subpoenas.

In his reply, Mr. Martin contends that defendants do not have standing to challenge the subpoenas directed to non-party witnesses.  Further, he cites to Lyons v. Leach, 2014 WL 823411 (E.D. Mich. March 3, 2014), to support his position that a subpoena can be used to compel production of a witness' affidavit, as long as the affidavit was created prior to the time the subpoena was served.  Finally, he states that he has not submitted appropriate fees because the Clerk's office did not provide him information regarding the appropriate amounts.

Mr. Martin is correct that, because he is proceeding in forma pauperis, the United States Marshal Service, pursuant to 28 U.S.C. 1915(d), is required to serve his subpoenas.  Mr. Martin is also correct that, "[o]rdinarily, a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action unless the party claims some personal right or privilege with regard to the documents sought."  Waite,

-13-

<u>Schneider, Bayless & Chesley Co. L.P.A. v. Davis</u>, 2013 WL 146362
(S.D. Ohio Jan. 14, 2013), *5 (citations omitted).  "A court,
however, may exercise its discretion to screen [] a subpoena
request, relieving the Marshals Service of its duty when
appropriate."  <u>Brown v. Ross County</u>, 2014 WL 4284874, *2 (S.D.
Ohio Aug. 28, 2014)(citations omitted).

The plain language of Mr. Martin's subpoenas requests that
these witnesses create an affidavit in response to the subpoena.
As defendants note, this is not contemplated by Rule 45.  In his
reply, Mr. Martin suggests, relying on <u>Lyons</u>, that because "these
affidavits were created numerous weeks ago when [the witnesses]
informed the plaintiff that they would supply him with their
affidavits after receiving their subpoenas," they are subject to
subpoena.  This does appear to be the rationale applied in <u>Lyons</u>.

In that case, defendants, in asserting that a subpoena
issued by a pro se prisoner plaintiff should be quashed, argued
that the subpoena required that the witness create an affidavit
in response to the subpoena.  In denying the motion to quash, the
Court found persuasive the plaintiff's assertion that the witness
had created the affidavit before the subpoena was served.

That is not exactly the situation here.  Although Mr. Martin
argues that the affidavits he requests have already been created,
there is no factual support for this assertion, and the subpoenas
have not been served.  Consequently, this Court is not being
asked to address an after-the-fact scenario like that presented
to the <u>Lyons</u> court.  Rather, in this case, the Court may deny Mr.
Martin's request to have the Marshal serve the subpoenas as they
are currently drafted and to direct him to prepare subpoenas that
comply with Rule 45 if he wishes to have the Marshal serve them.
The Court chooses to do so here.  For this reason, the motion for
alternate service will be denied.

B.  <u>Motion for Extension of Time (Doc. 50)</u>

-14-

Mr. Martin has moved for an extension of time to complete discovery. At the time Mr. Martin filed his motion, the discovery deadline was December 31, 2016. Defendants have not opposed this request and have requested their own extension of the deadline until January 31, 2017. In light of the rulings contained in this order, the Court agrees that an extension of the discovery deadline is appropriate. Consequently, the discovery deadline will be extended until February 28, 2017.

C. Motion to Appoint Counsel (Doc. 54)

Because this action has not yet progressed to the point that the Court is able to evaluate the merits of plaintiff's claim, the motion for appointment of counsel is denied. See Mars v. Hanberry, 752 F.2d 254 (6th Cir. 1985).

F. Motion Regarding Voice Stress Analyzer (Doc. 57)

Through this motion, Mr. Martin requests that Mr. Posey "undergo a Computerized Voice Stress Analyzer to determine the 'truth' or 'untruthfulness' of the claims before the Court ...." As he explains, this is a form of lie detection. He cites to precedent from the Ohio Supreme Court establishing the requirements for admission of polygraph tests. He also stipulates that, among other things, if Mr. Posey agrees to undergo such a test, he will undergo one as well.

In their response, defendants contend that courts have found such tests unreliable and the results generally inadmissible at trial. Further, they contend that they are specifically inadmissible for purposes of establishing the truth or falsity of disputed facts. Consequently, they request that the motion be denied.

Initially, the Court notes that it is not clear from Mr. Martin's filing whether it is intended as a request directed to Mr. Posey or whether Mr. Martin seeks an order from the Court compelling Mr. Posey to submit to such an examination. Mr.

-15-

Martin's reply clarifies that this filing was intended as a
discovery request.  Absent circumstances not present here,
discovery requests are not to be filed with the Court.  <u>See</u> Fed.
R. Civ. P. 5(d).  Consequently, the filing will be ordered
stricken.

However, Mr. Martin is cautioned that, "'[t]he Federal Rules
of Civil Procedure do not provide for discovery in the form of
compelling polygraph examinations of parties or other
individuals.'"  <u>Johnson v. Ohio Dept. of Rehabilitation and
Corrections</u>, 2014 WL 5782939, *2 (S.D. Ohio Nov. 6, 2014),
quoting <u>Sango v. Johnson</u>, 2014 WL 4658320, *2 (E.D. Mich. May 22,
2014).  "Although the Federal Rules of Civil Procedure establish
tools for obtaining discovery through a party's sworn testimony,
..., compulsory polygraph tests are not among those tools." <u>Id</u>.

D.  <u>Motion for a Temporary Stay (Doc. 63)</u>

Mr. Martin filed this motion in response to defendants'
motion for leave to depose him, which is addressed below.  In
support of his motion, Mr. Martin requests that his deposition be
delayed until a ruling on his various motions.  Because Mr.
Martin's motions are addressed by this order, the motion for a
temporary stay will be denied as moot.

E.  <u>Motion for Leave to File a Sur-Reply (Doc. 70)</u>

Mr. Martin has filed a motion for leave to file a sur-reply
in opposition to defendants' motion for an extension of the
discovery deadline.  Because this order grants an extension of
the discovery deadline, this motion will be denied as moot.

F.  <u>Motion for Emergency Relief (Doc. 71)</u>

Mr. Martin's final motion apparently was prompted by defense
counsel's alleged communications with individuals Mr. Martin
contends are "Plaintiff's witnesses."  Mr. Martin asserts that
such ex parte communications are morally wrong and equate to
obstruction of justice and witness tampering.  He seeks an order

-16-

directing that defense counsel "cease and desist with any communication with plaintiff's witnesses and enter an order that no evidence derived from this illegal communication be entered into the record ...."

It is generally understood that "'[w]itness interviews, conducted in private, are routine components of nearly every attorney's case preparation.'" Thomas v. 1156729 Ontario Inc., 979 F.Supp.2d 780, 786 (E.D. Mich. 2013), quoting In re Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig., 946 F.Supp.2d 512, 514 (S.D. W.Va. 2013). "'Unless impeded by privilege, an adversary may inquire, in advance of trial, by any lawful manner to learn what any witness knows.'" Id., quoting Doe v. Eli Lilly & Co., Inc., 99 F.R.D. 126, 128 (D.D.C. 1983). Stated another way, "[a]s a general rule, in the absence of a specific prohibition, potential witnesses are fair game for informal discovery by either side of a pending action." In re Am. Med., at 514, citing International Bus. Mach. Corp. v. Edelstein, 526 F.2d 37, 42 (2d Cir. 1975). That is, "'no party to litigation has anything resembling a proprietary right to any witness's evidence.'" In re Zimmer NexGen Knee Implant Products Liability Litigation, 890 F.Supp.2d 896, 907 (N.D. Ill. 2012), quoting Eli Lilly. Rather "[w]hile the Federal Rules of Civil Procedure have provided certain specific formal methods of acquiring evidence from recalcitrant sources by compulsion, they have never been thought to preclude the use of such venerable, if informal, discovery techniques as the ex parte interview of a witness willing to speak." Id.

While that is the general rule, the Court recognizes that, under Rule 26, it has the discretion, in certain circumstances, to issue a protective order on behalf of any person from whom discovery is sought. No such circumstances have been presented here. Consequently, Mr. Martin's motion for emergency relief

-17-

will be denied.

IV.   Defendants' Remaining Motion

A.   Motion to Depose Mr. Martin (Doc. 53)

Defendants have moved for leave to depose Mr. Martin
pursuant to Fed.R.Civ.P. 30(a)(2)(B).  The motion sets forth good
cause and the motion will be granted.

V.   Order

For the reasons stated above, the following motions are
denied:  the motions for leave (Docs. 42, 43, and 44); the
motions to compel (Docs. 46 and 47); the motion for alternate
service (Doc. 49); and the motion for appointment of counsel
(Doc. 54).  The motion to depose plaintiff (Doc. 53) is granted.
The motion for Mr. Posey to undergo a voice stress analysis (Doc.
57) is ordered stricken.  The motion to compel (Doc. 45); the
motion for a temporary stay (Doc. 63); and the motion to file a
sur-reply (Doc. 70) are denied as moot.  The motion for emergency
relief (Doc. 71) is denied.  The motions for an extension of the
discovery deadline (Docs. 50 and 61) are granted.  All discovery
shall be completed by February 28, 2017.  Motions for summary
judgment shall be filed by March 31, 2017.  The motion for leave
to file a sur-reply (Doc. 59) is granted for the limited purpose
of addressing the issues raised by the motion to compel
medical/mental health records (Doc. 51).  The motion to compel
(Doc. 51) remains pending.

Motions for Reconsideration

Any party may, within fourteen days after this Order is
filed, file and serve on the opposing party a motion for
reconsideration by a District Judge.  28 U.S.C. §636(b)(1)(A),
Rule 72(a), Fed. R. Civ. P.; Eastern Division Order No. 14-01,
pt. IV(C)(3)(a).  The motion must specifically designate the
order or part in question and the basis for any objection.
Responses to objections are due fourteen days after objections

-18-

are filed and replies by the objecting party are due seven days thereafter.  The District Judge, upon consideration of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

This order is in full force and effect even if a motion for reconsideration has been filed unless it is stayed by either the Magistrate Judge or District Judge.  S.D. Ohio L.R. 72.3.


/s/ Terence P. Kemp
United States Magistrate Judge