# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

RONALD MARTIN,

    Plaintiff,

                            Civil Action 2:15-cv-2294
                            Judge George C. Smith
    v.                         Magistrate Judge Chelsey M. Vascura

CODY POSEY, *et al.*,

    Defendants.

## REPORT AND RECOMMENDATION

Plaintiff, Ronald Martin, a state-court inmate who is proceeding without counsel, brought this action under 42 U.S.C. § 1983, alleging that Woody Coey, Cody Posey, Brent Cruse, Corby Free, Roger Wilson, and Gary Mohr violated his First and Fourteenth Amendment rights. By previous order, this Court dismissed Plaintiff's claims against Corby Free, Roger Wilson, and Gary Mohr. *See Martin v. Posey*, No. 2:15-cv-2294, 2016 WL 455398 (S.D. Ohio Feb. 5, 2016), adopted and affirmed 2016 WL 770997 (S.D. Ohio Feb. 29, 2016). This matter is now before the Court for consideration of Defendants' Motion for Summary Judgment (ECF No. 85) as to Plaintiff's remaining claims for retaliation and conspiracy against Defendants Coey, Posey, and Cruse. For the reasons that follow, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 85) be **GRANTED**.

## I. Background

Plaintiff was an inmate at the Chillicothe Correctional Institution ("CCI") when the October and November 2014 events giving rise to this lawsuit occurred. At that time, Plaintiff was assigned to work in the Ohio Penal Industries ("OPI") paint shop and was supervised there by Timothy Blakeman. According to Plaintiff's verified Complaint and his Declaration attached to his Memorandum in Opposition to Defendants' Motion for Summary Judgment, in October 2014, Defendant Posey, a corrections officer, asked him if he knew how to open the lock on Mr. Blakeman's locker. Because this request made Plaintiff uncomfortable, on October 15, 2014, he reported Mr. Posey to Supervisor Randy Dunham. On October 20, 2014, Mr. Blakeman returned to work, learned that his lock was missing, and filed an incident report. Upon questioning by Mr. Blakeman, Plaintiff informed Blakeman of Mr. Posey's request.

On October 23, 2014, citing information obtained from Plaintiff and another inmate, Mr. Robison, Mr. Blakeman filled out a second incident report. That same day, Plaintiff was handcuffed, called to the Captain's office, and placed in isolation for eight days. On November 3, 2014, Defendant Coey, OPI's Industrial Manager, filed a conduct report against Plaintiff. In the conduct report, Defendant Coey alleged that Plaintiff had made false statements to CCI staff to corroborate false statements by Mr. Robison. The conduct report provides, in relevant part, as follows:

> Be advised through an investigation it has been determined that Inmate Martin made false statements to Mr. Blakeman (OPI PWS - Paint Shop) to go along with a story fabricated by Inmate Robison 517-488. Inmate Martin stated to Mr. Blakeman that PWS Posey asked him to pick a lock that was reported as missing form a personal locker in the OPI Paint Shop. Through interviews it was discovered that the lock in question was noticed by staff to be missing from the locker Monday morning of the week that Inmate Martin was stating the incident took place. Each inmate did not give a specific time or date but stated a week time frame instead. Therefore Mr. Posey could not have asked Inmate Martin to pick a lock that was already missing off the locker.

(Conduct Report, ECF No. 85-2.) Plaintiff alleges that this conduct report is false and further states that he did not even know that Mr. Robison had also spoken with Mr. Blakeman. Plaintiff also states that he had told the same story days earlier to Supervisor Dunham. According to Plaintiff, the conduct report was a cover-up for Defendant Posey's criminal activities and filed in retaliation for Plaintiff's attempt to expose those activities.

On November 4, 2014, Plaintiff reported to Sergeant Parnell for a hearing on and disposition of the conduct report. Plaintiff alleges that Parnell said to him, "personally, I think your [sic] getting screwed, but I have to find you guilty because they want you out of OPI and never allowed through the OPI gate again." (Compl. 7, ECF No. 37.) According to Plaintiff, Parnell added that he had found Plaintiff guilty because Defendant Coey wanted Plaintiff fired from OPI.

In Parnell's affidavit, which Defendants attach in support of their Motion for Summary Judgment, he avers that he made no such representation to Plaintiff or any other individual and that he found Plaintiff guilty "[a]fter considering all of the evidence, including the Conduct Report, Incident Report, and witness testimony," and that he found Plaintiff was not credible. (Parnell Aff. ¶ 5, ECF No. 85-5.) He noted that Plaintiff could have called witnesses in his defense but did not do so. Parnell further represents that neither Defendant Coey nor anyone else told him to find Plaintiff guilty and that he does not even know Defendant Coey. He also says that he independently decided that the appropriate disposition was changing Plaintiff's job assignment.

Following this Court's February 29, 2016 Order affirming a February 5, 2016 Report and Recommendation and granting in part and denying in part Defendants' Motion to Dismiss, only

Mr. Martin's retaliation and related conspiracy claims against Messrs. Coey, Posey, and Cruse remain. The Court has described these claims as follows:

> To summarize, Mr. Martin has stated a claim for retaliation based on the following allegations. He provided statements to his supervisor Mr. Blakeman regarding Mr. Posey's alleged criminal activity in connection with Mr. Blakeman's investigation regarding the break-in to his locker. As a result, Mr. Coey prepared a false conduct report against Mr. Martin in conspiracy with Mr. Posey and Mr. Cruse which then caused Mr. Martin to lose his job. Mr. Coey and Mr. Posey conspired to have Mr. Coey write the false conduct report because Mr. Martin had implicated Mr. Posey in Mr. Blakeman's investigation. Further, Mr. Cruse had full knowledge of the false conduct report, was willing to write it himself until he realized he could not do so anonymously, and admittedly worked to cover up Mr. Posey's guilt.
>
> \*    \*    \*
>
> The defendants recognize Mr. Martin's attempt to set forth a conspiracy claim, but contend that Mr. Martin's allegations are too conclusory to state such a claim under §1983. . . . Here, Mr. Martin has alleged that a single plan existed - a plan to protect Mr. Posey by implicating Mr. Martin as a liar; that Mr. Posey, Mr. Coey, and Mr. Cruse shared in this general objective of protecting Mr. Posey at Mr. Martin's expense; that a false conduct report was written in retaliation for Mr. Martin's exposing Mr. Posey's illegal conduct; and that this retaliation violated Mr. Martin's First Amendment rights.

Defendants raise several issues in their motion for summary judgment. (ECF No. 85.) First, they contend that Mr. Martin failed to exhaust his administrative remedies under the PLRA because he did not appeal his job reclassification in accordance with the Ohio Administrative Code. They next assert that Mr. Martin failed to exhaust his administrative remedies with respect to any claims against Mr. Cruse. Further, as explained in more detail below, they assert that Mr. Martin has failed to establish any of the elements of a retaliation claim. They explain that Mr. Martin's failure to do so also dooms his conspiracy claim. Finally, they contend that they are entitled to qualified immunity because "an inmate has no clearly established constitutional right to fabricate prison staff misconduct and remain free from any consequence of

4

that fabrication." (*Id.* at PAGEID #718.) Mr. Martin has filed a lengthy, highly detailed response and a sur-reply. (ECF Nos. 91 and 102.)

## II. The Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion"). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"), *cert. denied*, 565 U.S. 1157 (2012). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a

5

showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

### III. Analysis

**A. Exhaustion**

Initially, the Court will address the issue of whether Mr. Martin properly exhausted his administrative remedies. In making the argument that he did not, Defendants recognize that, in part, they are not asserting the typical exhaustion defense. That is, they are not framing their exhaustion argument in terms of Mr. Martin's failure to pursue the three-step grievance process set forth in Ohio Administrative Code §5120-9-31. Rather, they contend that the proper administrative procedure applicable to Mr. Martin's claim is found in Ohio Administrative Code §5120-3-06. This provision pertains to appeals of prison job reclassifications. In making this argument, they characterize "the thrust" of Mr. Martin's claim as "that he was wrongly removed from his assignment at OPI as a result of his rule violation." (ECF No. 85, at PAGEID #709.)

The Court does not view this as an accurate statement of Mr. Martin's claim. As explained above, Mr. Martin has asserted a retaliation claim. His allegation regarding his job loss is directed to an element of that claim. That is, Mr. Martin's statement of his claim is that he lost his job at OPI, not based on an alleged rule violation, but as a result of Defendants' alleged retaliation for his truthful statements to Mr. Blakeman implicating Mr. Posey. Moreover, as the Court discussed in the context of the motion to dismiss, because prisoners have no protected liberty interest in prison vocational programs, Mr. Martin has no independent due process claim arising from the loss of his prison job. *See Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989). Consequently, the Court finds no merit to this aspect of Defendants' exhaustion argument.

Beyond this, Defendants assert that Mr. Martin has not exhausted his administrative remedies under §5120-9-31 with respect to Mr. Cruse. The Court of Appeals recently addressed the issue of exhaustion, explaining as follows:

> The Prison Litigation Reform Act requires state prisoners to follow and exhaust all applicable state grievance procedures before filing suit in federal court. *See* 42 U.S.C. 1997e(a); *Woodford v. Ngo*, 548 U.S. 82, 90[] (2006). This requirement is not jurisdictional; rather, exhaustion is an affirmative defense that must be pleaded and proved by the defendants. *Jones*, 549 U.S. at 212[]. When the defendants in prisoner civil rights litigation move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012).
>
> There is no uniform federal exhaustion standard. A prisoner exhausts his remedies when he complies with the grievance procedures put forward by his correctional institution. *Jones*, 549 U.S. at 217-19[]. "This court requires an inmate to make 'affirmative efforts to comply with the administrative procedures,' and analyzes whether 'those efforts to exhaust were sufficient under the circumstances.'" *Risher*, 639 F.3d at 240 (quoting *Napier v Laurel Cty.*, 636 F.3d 218, 224 (6th Cir. 2011)).

*Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017).

The purpose of the exhaustion requirement "'is to allow prison officials 'a fair opportunity' to address grievances on the merits, to correct prison errors that can and should be corrected and to create an administrative record for those disputes that eventually end up in court.'" *Id*. at 591 (quoting *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010)). Requiring inmates to exhaust prison remedies in accordance with state procedures furthers this objective and "'prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation in the process.'" *Id*. The Court of Appeals has recognized an exception to this rule when "prison officials waive any procedural irregularities in a grievance" and "nonetheless address the grievance on the merits." *Id*.

As noted, Ohio utilizes a three-step grievance system for resolving inmate complaints as set forth in Ohio Admin. Code §5120-9-31(K). The first step requires an inmate to "file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint." O.A.C. § 5120-9-31(K)(1). If the inmate is dissatisfied with the result, he may file a formal grievance with the inspector of institutional services at his institution. O.A.C. § 5120-9-31(K)(2). If an inmate remains dissatisfied, he may file an appeal to the office of the chief inspector. O.A.C. § 5120-9-31(K). An inmate has not exhausted his remedies under § 5120-9-31 until he has received a decision on his appeal to the office of the chief inspector. *Younker v. Ohio State Univ. Med. Ctr.*, No. 2:11-cv-00749, 2013 WL 3222902, at *4 (S.D. Ohio June 25, 2013). Further, § 5120-9-31(K) requires that informal complaints and grievances set forth specific information, including

> dates, times, places, the event giving rise to the complaint and, if applicable, the name or names of personnel involved and the name or names of any witnesses . . . . In the event an inmate does not know the identity of the personnel involved, a "John/Jane Doe" complaint may be filed. However, the complaint shall be specific as to dates, times, places, physical descriptions of any unidentified personnel and the actions of said personnel giving rise to the complaint.

In support of their position, Defendants have submitted a copy of Mr. Martin's notification of grievance form representing his completed second step in the grievance process. Mr. Martin did not directly address the issue of exhaustion as it relates to Mr. Cruse in his response. He did, however, submit a copy of his notification of grievance form representing his completed first step. These forms contain largely the same description of the incident forming the basis of Mr. Martin's claims here.

The Court's review of these forms reveals that neither form mentions Mr. Cruse by name nor describes any conduct as attributed to him in the complaint by which he could be identified. In the absence of even arguably identifying information in these documents, the Court cannot

conclude that any issue of material fact exists as to whether Mr. Martin has exhausted his administrative remedies with respect to any claims against Mr. Cruse. He has not. Consequently, the undersigned recommends that Defendants' Motion for Summary Judgment be granted as to all claims against Mr. Cruse and that those claims be dismissed without prejudice for failure to properly exhaust his administrative remedies. *See Boyd v. Corrs. Corp. of Am.*, 380 F.3d 989, 994 (6th Cir. 2006) (citing *Knuckles El v. Toombs*, 215 F.3d 640 (6th Cir. 2000)) ("A dismissal under § 1997e should be without prejudice.").

**B.  Retaliation and Conspiracy to Retaliate**

As the Court has stated, Plaintiff's primary claim in this matter is that Defendants retaliated against him for engaging in conduct that is protected by the United States Constitution. In order to establish his retaliation claim, Mr. Martin must prove that (1) he engaged in protected conduct; (2) he suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in the protected conduct; and (3) the adverse action was motivated at least in part by his protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

With respect to the first element, Mr. Martin made statements to Mr. Blakeman in the course of Mr. Blakeman's investigation of his missing lock and bases his retaliation claim on those statements. As the Court noted in addressing the motion to dismiss, the Court of Appeals has acknowledged a prisoner's constitutional right to cooperate in an internal prison investigation. *See Griffin v. Berghuis*, 563 F. App'x 411, 421 (6th Cir. 2014). Defendants do not dispute this. Instead, they suggest that the circumstances here are distinguishable because Mr. Martin was not just a respondent in the prison investigation, he was the impetus for the investigation. The Court does not find this to be a meaningful distinction. The statements at

issue here are the statements made by Mr. Martin to Mr. Blakeman in the course of Mr. Blakeman's investigation of the missing lock. Plaintiff's statements in that investigation are protected conduct as long as they were truthful. *See Cornell v. Woods*, 69 F.3d 1383, 1388 (8th Cir. 1995) ("truthfully answering questions concerning a misconduct investigation against a correctional officer" is conduct protected by the First Amendment), *cited with approval in Griffin*, 563 F. App'x at 421.

Defendants next argue that Mr. Martin lied when speaking with Mr. Blakeman. They contend that, because lying is not protected conduct, Mr. Martin cannot succeed on his retaliation claim. Although a prisoner has a right to cooperate in an internal prison investigation, it is well-settled that, "if a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one." *Thaddeus-X*, 175 F.3d at 395.

Sergeant Parnell found Mr. Martin guilty of violating Rule 27 of Ohio Administrative Code 5120-9-06, Inmate Rules of Conduct. That regulation provides in pertinent part as follows:

> (A) The disciplinary violations defined by this rule shall address acts that constitute an immediate and direct threat to the security or orderly operation of the institution, or to the safety of its staff, visitors and inmates, (including the inmate who has violated the rule,) as well as other violations of institutional or departmental rules and regulations.
>
> * * *
>
> (27) Giving false information or lying to departmental employees.

The legitimacy of this prison regulation is not at issue. Rather, the issue with respect to the first element of Mr. Martin's retaliation claim is whether he lied.

In Mr. Martin's declaration, made under penalty of perjury, he specifically states that, when asked by Mr. Blakeman about whether he knew anything about the lock, "[he] told Mr. Blakeman exactly what Posey had asked [him] to do." *See* Declaration of Ronald Martin (ECF

No. 91-1, at ¶ 4.) He further states that, "[o]n Monday, November 3, 2014, a conduct report was filed by Woody Coey alleging that I lied to departmental staff. I deny the allegation that I lied to any staff . . . ." (*Id*. at ¶ 9.) Accordingly, the record includes evidence that Plaintiff did not lie in his statements to Mr. Blakeman.

Sergeant Parnell found, however, that Plaintiff was guilty of lying, and Defendants contend that that finding precludes Plaintiff from demonstrating that he engaged in protected conduct because "[a] finding of guilt based upon some evidence of a violation of prison rules, 'essentially checkmates [a] retaliation claim.'" *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (quoting *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994), *cert. denied*, 515 U.S. 1145 (1995)).

In this case, Sergeant Parnell relied on several sources of evidence in making his finding that Plaintiff had lied to Mr. Blakeman. Those sources include witness testimony, which is the subject of accusations of dishonesty on both sides. Another source of evidence underlying Parnell's finding, however, was the conduct report itself. That report included information about the timing of events related to the disappearance of the lock and suggested that Plaintiff's version of events could not have been true because the lock was reported to be removed from the locker before Plaintiff alleges that Defendant Posey asked Plaintiff about opening it. The timing of events alone would be a sufficient basis for a finding that Plaintiff's version of events was not credible.

Plaintiff has addressed the evidence in support of the timing as alleged in the conduct report and has attempted to show that it could not be correct because it depends upon Defendant Posey's having worked in the paint shop on October 6, 2014, while Defendant Posey denied having worked on that date in response to a request for admission by Plaintiff. The request for

admission actually asked Defendant Posey to admit that he had worked in the paint shop on September 30 and October 1, 2, 6, 7, 8, 9, 13, 14, 15, and 16. (ECF No. 91-1, Exhibit O, No. 6; PAGEID #1131). Defendant Posey's denial cannot be interpreted as it applies to each date in the list. If he had not worked in the paint shop on any one of those dates, he could appropriately have denied the entire request for admission. Thus, the general denial is not evidence that he did not work in the paint shop on October 6 specifically. Indeed, Plaintiff has not identified evidence that tends to show that the timing of events as outlined in the conduct report was not *some evidence* in support of Sergeant Parnell's finding that Plaintiff had lied.

Because some evidence supports the finding that Plaintiff was guilty of lying in making statements about Defendant Posey's request that he assist in removing the lock, Plaintiff cannot prove that he engaged in protected conduct in making those statements. *See Jackson*, 158 F. App'x at 662. He is precluded, therefore, from proving the first element of his retaliation claim.

Still, Mr. Martin specifically challenges Defendants' assertion that Sgt. Parnell based his decision on "some evidence of a violation of prison rules." Mr. Martin contends that, rather than basing his decision on the reports and his own independent assessment of Mr. Martin's credibility, Sergeant Parnell found Mr. Martin guilty strictly based on Mr. Coey's instructions.

Mr. Martin bases this belief on statements Sergeant Parnell allegedly made to him at the hearing. At his deposition, Mr. Martin testified about these statements as follows:

> Q. When you said "the sarg came out," you're referring to Sergeant Parnell?
>
> A. Out of his office, yes. He said he wants to go over and see what Woody's got to say and find out what's going on. We stood around, and then he came back. I just know what Dave said he said so I'm not even going to say nothing about that.
>
> But when I went in, Sergeant Parnell says, "They want your job. They want you removed from your job." I said, "What?" He says, "Look, I don't think

it's a fair thing." He said, "I think you're getting screwed," is what he basically said.

    Q. Can I pause? Is that actually what he said, or [is] that the gist of what he said. Did he use the word "screwed"?

    A. Yes. He said, "I think you're getting screwed."

    Q. Okay. He immediately said that when the hearing started?

    A. Yeah, right when we started getting into it.

    Q. That was a hearing with just you and Sergeant Parnell?

    A. Yes.

    Q. And the door was closed?

    A. Right. He told me, he says, "The ticket says lying and false information," or something like that. I'm not exactly [sure] what the ticket was about. But he said that, "They just want you out of OPI. You're not losing your privilege housing or none of that." He said, "They just want you out of OPI and not have you back."

    Q. And by "they" he's referring to –

    A. Woody Coey.

(ECF No. 85-3, at p. 732; *see also* Martin Decl., ECF No. 9-1, at ¶ 10 ("Sergeant Parnell told me that 'personally, I think you're getting screwed, but I have to find you guilty because they want you out of OPI and never allowed through the gate again."); Verified Compl., ECF No. 3, at p. 37-38.)

Sergeant Parnell offers a very different version of events and denies all of the statements that Plaintiff attributes to him. (*See* ECF No. 85-5) The statements, as Plaintiff relates them, are hearsay. *See* Fed. R. Evid. 801(c)(1). Plaintiff has offered them in his attempt to prove the truth of the matters asserted in the statements. *See* Fed. R. Evid. 801(c)(2). They are *prima facie* inadmissible for that purpose. Fed. R. Evid. 802; *see also Alpert v. United States*, 481 F.3d 404,

409 (6th Cir. 2007) ("'[E]vidence submitted in opposition to a motion for summary judgment must be admissible. Hearsay evidence . . . must be disregarded.'" (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (alteration in original))). Accordingly, Plaintiff has not shown that he would be able to introduce admissible evidence to prove that Sergeant Parnell did not base his decision on the evidence he cited. His retaliation claim fails at the first element.

With respect to the second element of a retaliation claim, adverse action, Plaintiff has identified two actions: the filing of an allegedly false disciplinary report and the termination of his paint shop job. Defendants concede that the filing of a false disciplinary report is an adverse action. They assert, however, that the conduct report in this case was not false. (ECF No. 85, at PAGEID #712); *see, e.g.*, *Smith v. Craven*, 61 F. App'x 159, 162 (6th Cir. 2003) (finding that a false disciplinary report was an adverse action). Defendants also recognize that termination of prison employment may constitute adverse action, but explain that Sergeant Parnell's decision was independent and the decision was approved by Work Program Assignment Committee Chairperson Cherri Barch. (*Id.* at PAGEID #713.)

"False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are adjudicated in a fair hearing." *Jackson*, 158 F. App'x at 662; *see also Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at *1 (6th Cir. Dec. 23, 1998) (district court properly dismissed a complaint alleging that prison officials "deliberately issued a false disciplinary report" against the plaintiff as frivolous because "even if the disciplinary report was false, . . . a prisoner has no constitutionally protected immunity from being wrongly accused.").

Plaintiff's evidence that he did not receive a fair hearing would be the same hearsay statements that he offered in support of the first element of his claim. He has not demonstrated that he can prove that Sergeant Parnell did not afford him a fair hearing absent the statements Plaintiff has attributed to Sergeant Parnell and Parnell has denied making. Accordingly, he has not shown that he could adduce admissible evidence to prove the second element of his retaliation claim to the extent that it is based on the allegedly false conduct report.

For the same reason, Plaintiff cannot prove his claim to the extent that it is based on the loss of his paint shop job. That alleged adverse action was a result of the same conduct that was the basis for the conduct report. Plaintiff was found guilty of that conduct and has not shown that he could adduce admissible evidence tending to prove that he did not receive a fair hearing.

The third element of a retaliation claim, that an adverse action was taken because of the protected conduct, is a causation inquiry focusing on the defendants' motive. *Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007). Once again, the focus of Defendants' argument is on Sergeant Parnell's declaration that he acted independently and was not part of the conspiracy to find Mr. Martin guilty of a rule violation. (ECF No. 85, at p. 714.) Once again, Plaintiff has identified only hearsay statements attributed to Sergeant Parnell in opposition to the Defendants' motion. He has not, therefore, shown that he could adduce evidence tending to prove the causation element. For that reason, and those above, the Court concludes that Defendants are entitled to summary judgment with respect to Plaintiff's retaliation claim.

Defendants contend that they are entitled to summary judgment on Mr. Martin's conspiracy claim because his retaliation claim fails. (ECF No. 85, at PAGEID #718.) As explained above, the Court will recommend granting summary judgment as to Mr. Martin's retaliation claim. Consequently, to the extent that Defendants rely on the dismissal of the

retaliation claim as the basis for their Summary Judgment Motion directed to the conspiracy claim, the Motion for Summary Judgment should be granted. *See, e.g., Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009).

**C.     Qualified Immunity**

As the Court noted at the outset of this Report and Recommendation, Defendants have also argued that they are entitled to qualified immunity with respect to Plaintiff's claims in this matter. Defendants have not directed this aspect of their Motion for Summary Judgment to Plaintiff's actual claims, however. Rather, they argue that the Constitution does not protect Plaintiff's right "to fabricate prison staff misconduct" or "to insist that [Defendants] make all questionable credibility determinations in his favor." (ECF No. 85, at PAGEID ##718-791). Those are not the rights on which Plaintiff bases his claims, so the Court finds Defendants' motion on the qualified immunity basis to be moot.

**IV.     Disposition**

For the reasons stated above, it is **RECOMMENDED** that Defendants' Motion for Summary Judgment (ECF No. 85) be **GRANTED**.

**V.     Procedure on Objections**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made

16

herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE